UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM directed to Non-Party THE MARSHALL PROJECT, INC. and issued in connection with<br><br>*Montague v. City of Cleveland*, No. 1:22-cv-01878<br><br>(Pending in the United States District Court for the Northern District of Ohio) | MISC. CASE NO. 1:24-mc-309<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
THE MARSHALL PROJECT, INC.'S MOTION TO QUASH
THE CITY OF CLEVELAND'S SUBPOENA**

Jason P. Criss
Harrison A. Newman
Giovanni J. Scarcella
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
jcriss@cov.com
hnewman@cov.com
gscarcella@cov.com

*Counsel for Non-Party
The Marshall Project, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

I.    FACTUAL AND PROCEDURAL BACKGROUND............................................................ 1

    A.    FACTUAL BACKGROUND............................................................................... 1

    B.    PROCEDURAL BACKGROUND....................................................................... 2

        1.    VINCENT MONTAGUE'S WRONGFUL TERMINATION LAWSUIT AGAINST CLEVELAND ....................................................... 2

        2.    CLEVELAND'S SUBPOENA TO THE MARSHALL PROJECT ........... 3

II.    ARGUMENT ................................................................................................................... 5

    A.    THE JOURNALIST'S PRIVILEGE PROTECTS TMP'S RESEARCH AND REPORTING ................................................................................................ 6

    B.    CLEVELAND CANNOT MAKE THE SHOWING REQUIRED TO OVERCOME THE JOURNALIST'S PRIVILEGE ................................................ 7

        1.    THE REQUESTED MATERIALS ARE NOT LIKELY RELEVANT TO A SIGNIFICANT ISSUE IN THE WRONGFUL DISGHARGE SUIT .................................................................................. 8

        2.    THE REQUESTED MATERIALS ARE REASONABLY ATTAINABLE FROM OTHER AVAILABLE SOURCES ...................... 9

    C.    THE SUBPOENA FAILED TO ALLOW A REASONABLE TIME TO COMPLY ............................................................................................................... 12

CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Aberdeen City Council v. Bloomberg L.P.*,
    688 F. Supp. 3d 169 (S.D.N.Y. 2023)..................................................................................11, 13

*In re Appl. of Consumers Union of U.S., Inc.*,
    495 F. Supp. 582 (S.D.N.Y. 1980).................................................................................................7

*In re Appl. to Quash Subpoena to Nat'l Broadcasting Co.*,
    79 F.3d 346 (2d Cir. 1996)............................................................................................................9

*Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*,
    2021 WL 411379, (S.D.N.Y. Feb. 5, 2021)..................................................................................5

*Baker v. F & F Inv.*,
    470 F.2d 778 (2d Cir. 1972)..........................................................................................................6

*Blum v. Schlegal*,
    150 F.R.D. 42 (W.D.N.Y. 1993)..................................................................................................13

*Bouchard Transp. Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*,
    2015 WL 6741852 (S.D.N.Y. Nov. 4, 2015)..............................................................................12

*Breaking Media, Inc. v. Jowers*,
    2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)....................................................................5, 10, 11

*Chevron Corp. v. Berlinger*,
    629 F.3d 297 (2d Cir. 2011)..........................................................................................................7

*Columbia Broad. Sys., Inc. v. Dem. Nat'l Comm.*,
    412 U.S. 94 (1973).........................................................................................................................7

*Concerned Citizens of Belle Haven v. The Belle Haven Club*,
    2004 WL 3246719 (D. Conn. Mar. 22, 2004) .............................................................................8

*Gonzales v. Nat'l Broadcasting Co.*,
    194 F.3d 29 (2d Cir. 1999)..........................................................................................1, 6, 8, 13

*Hutira v. Islamic Republic of Iran*,
    211 F. Supp. 2d 115 (D.D.C. 2002) ..............................................................................................9

*In re McCray, Richardson, Santana, Wise, and Salaam Litig.*,
    928 F. Supp. 2d 748 (S.D.N.Y. 2013)...........................................................................................7

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
    991 F. Supp. 2d 464 (S.D.N.Y. 2013)..............................................................................7, 8, 10

*Montague v. City of Cleveland*,
  2023 WL 8593408 (N.D. Ohio Dec. 11, 2023) ...................................................................3

*New Eng. Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*,
  2014 WL 1567297 (S.D.N.Y. Apr. 17, 2014)..........................................................8, 9, 10

*In re Parker*,
  2019 WL 4233148 (N.D.N.Y. Sept. 6, 2019) ...................................................................11

*In re Petrol. Prods. Antitrust Litig.*,
  680 F.2d 5 (2d Cir. 1982) (per curiam)..............................................................................11

*Pugh v. Avis Rent a Car Sys., Inc.*,
  1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) ..........................................................5, 6, 8, 13

*In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP
  Address 69.120.35.3*,
  2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010)......................................................................12

*Schiller v. City of New York*,
  245 F.R.D. 112 (S.D.N.Y. 2007) .......................................................................................10

*In re Search Warrant Executed on Nov. 5, 2021*,
  2023 WL 3005726 (S.D.N.Y. Mar. 21, 2023) ...................................................................12

*Sikelianos v. City of New York*,
  2008 WL 2465120 (S.D.N.Y. June 18, 2008) ...............................................................8, 13

*United States v. Burke*,
  700 F.2d 70 (2d Cir. 1983).........................................................................................6, 8, 9

*United States v. Hendron*,
  820 F. Supp. 715 (E.D.N.Y 1993) .......................................................................................8

*United States v. Karen Bags, Inc.*,
  600 F. Supp. 667 (S.D.N.Y. 1985).....................................................................................13

*United States v. Treacy*,
  639 F.3d 32 (2d Cir. 2011)...................................................................................................6

*Wisc. Province of Soc'y of Jesus v. Cassem*,
  2019 WL 4928866 (D. Conn. Aug, 22, 2019) ...................................................................12

**Federal Rules**

Fed. R. Civ. P. 45(d)(3)(A)................................................................................................................5

Fed. R. Civ. P. 45(d)(3)(A)(iii).........................................................................................................5

Non-party The Marshall Project, Inc. respectfully submits this Memorandum of Law in Support of its Motion to Quash the City of Cleveland's Subpoena.

## INTRODUCTION

The City of Cleveland issued a subpoena seeking to compel The Marshall Project, Inc. ("TMP"), an award-winning nonprofit news organization, to produce unpublished materials gathered during the reporting process. Cleveland wants to use the fruits of TMP's newsgathering labor to defend itself against a claim that it wrongfully terminated the employment of a municipal employee in litigation to which TMP is not a party. But as the Second Circuit has warned, "permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties." *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29, 35 (2d Cir. 1999). Cleveland's subpoena raises that specter here, if it is enforced. The journalist's privilege, however, safeguards from discovery the newsgathering materials that Cleveland seeks, and Cleveland cannot overcome the privilege by demonstrating either the relevance of the requested materials or its own inability to obtain the same information from other sources. For these reasons, and as set forth in greater detail below, Cleveland's subpoena should be quashed.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

#### A.   FACTUAL BACKGROUND

TMP is a nonpartisan, nonprofit news organization that seeks to create and sustain a sense of national urgency about the U.S. criminal justice system through journalism. Sealey Decl. ¶ 4. TMP regularly publishes reporting on policing, prisons, and other topics related to criminal justice. *Id.* TMP has won countless awards for its reporting, including two Pulitzer Prizes. *Id.* ¶ 5. TMP maintains its headquarters and primary newsroom in Midtown Manhattan. *Id.* ¶ 3.

On May 23, 2024, TMP published a feature story, *Out of the Blue: The Rise and Fall of Black Cop* (the "Feature"). Sealey Decl. ¶ 6. The Feature tells the story of Vincent Montague, a Black former police sergeant in Cleveland, Ohio. Sealey Decl., Ex. 1. Mr. Montague previously served as the head of the Black Shield Police Organization, a 501(c)(3) organization formed to provide support for Black police officers in Greater Cleveland. *Id.* The Feature also explored the experience of Black police officers in Cleveland more broadly, including the history of Black citizens serving as Cleveland police officers, how their experience intersects with the culture of the Cleveland Division of Police, examples of disparities in disciplinary approaches towards Black and White officers, and reform efforts. *Id.*

Wilbert Cooper is a staff writer for TMP and the author of the Feature. Cooper Decl. ¶¶ 2, 4. He lives in Brooklyn, New York. *Id.* ¶ 3. Mr. Cooper researched and wrote most of the Feature while residing in Brooklyn; in New York, New York; and in New Orleans, Louisiana. *Id.* ¶ 5. The Feature was based, in part, on interviews of Mr. Montague conducted by Mr. Cooper. Mr. Cooper conducted several telephone interviews with Mr. Montague from his home in Brooklyn and from New Orleans. *Id.* ¶ 6. He also conducted several in-person interviews while with Mr. Montague in Little Creek, Virginia. *Id.* ¶ 7. Mr. Cooper also researched and wrote some of the Feature while in Cleveland, Ohio. *Id.* ¶ 5. The Feature included a portion of the material from Mr. Cooper's interviews of Mr. Montague. *Id.* ¶ 9.

**B. PROCEDURAL BACKGROUND**

**1. VINCENT MONTAGUE'S WRONGFUL TERMINATION LAWSUIT AGAINST CLEVELAND**

As the Feature notes, Mr. Montague was fired from his position as a Cleveland police sergeant on December 4, 2021. *See* Sealey Decl., Ex. 1. On October 18, 2022, Mr. Montague sued the City of Cleveland and three individuals, alleging that he was wrongfully terminated from

2

his former position as a sergeant in the Cleveland Division of Police (the "Wrongful Discharge Suit"). *See* Compl., Dkt. No. 1, *Montague v. City of Cleveland*, No. 1:22-cv-01878 (N.D. Ohio filed Oct. 18, 2022).

On December 11, 2023, the Court partially granted and partially denied Cleveland's motion for judgment on the pleadings, allowing Mr. Montague's Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") and *Monell* claims to proceed. *See Montague v. City of Cleveland*, 2023 WL 8593408 (N.D. Ohio Dec. 11, 2023).

Following a May 24, 2024 case management conference, the Court set a non-expert discovery deadline of September 23, 2024 for Mr. Montague's USERRA claim and stayed discovery on his *Monell* claim. *See* Minute Entry, *Montague v. City of Cleveland*, No. 1:22-cv-01878 (N.D. Ohio May 24, 2024) ("Case Management Conference held on 5/24/2024. Case is assigned to the standard track. Non-expert discovery on Plaintiff's USERRA claim shall be completed by 09/23/2024. Court stays discovery on Plaintiff's Monell claim per parties [*sic*] agreement.").

### 2. CLEVELAND'S SUBPOENA TO THE MARSHALL PROJECT

Matthew Aumann, an attorney from the City of Cleveland Department of Law, first contacted Mr. Cooper on May 30, 2024, seeking "copies of any recordings of [his] conversations with Mr. Montague, either audio files or written notes." Cooper Decl., Ex. 1. Mr. Cooper did not respond to the email. Cooper Decl. ¶ 11.

On June 10, 2024, TMP's media law counsel, Jason Criss, sent a letter to Mr. Aumann, informing him that TMP and Mr. Cooper declined to provide the requested materials. *See* Criss Decl., Ex. 1. Counsel for both parties scheduled a June 14, 2024 videoconference to discuss the matter. Criss Decl. ¶ 5. However, on June 13, 2024, Mr. Aumann emailed Mr. Criss a subpoena and a letter further detailing the request for records related to Mr. Cooper's conversations with Mr.

3

Montague.  *See* Criss Decl., Ex. 2.  The letter claimed that TMP's "recordings of Mr. Montague as they relate to his time with the Division of Police, his interactions with [the owner of a Cleveland bar, Andrew] Long, and his current employment, go to the heart of Mr. Montague's lawsuit."  *Id.* at 4.  Mr. Criss informed Mr. Aumann that he was not authorized to accept service of a subpoena to TMP.  Criss Decl. ¶¶ 8–9.

Cleveland served TMP with a subpoena (the "Subpoena"), through TMP's registered agent, on June 26, 2024, but did not inform TMP's counsel that it had effected service until July 9, 2024, which is when TMP first learned that service had been made.  *Id.* ¶¶ 10–11.  The Subpoena commanded TMP and/or Mr. Cooper to produce "[a]ny and all statements made by Vincent Montague, regardless of medium (audio files, video files, emails, texts, correspondence, etc.) that relate to the following topics:"  (1) "Vincent Montague's interactions with Andrew [Long];" (2) "Vincent Montague's interactions with Director Karrie Howard;" (3) "Vincent Montague's interactions with the Division of Police, including any of its employees; and" (4) "Vincent Montague's current employment."  *See* Criss Decl., Ex. 3, at 4.  The Subpoena also commanded TMP and/or Mr. Cooper to produce "[a] declaration or sworn statement . . . that provides the following information:"  (1) "[t]he produced records are true and accurate copies of records maintained in the ordinary course of scope of business of the Marshall Project and/or Wilbert Cooper;" (2) "[i]dentify in an example recording, by time-stamp, who is speaking; and" (3) "[i]dentify the author of any other record where the author or speaker is unclear."  *Id.* at 4–5.  The Subpoena commanded compliance via email production on July 8, 2024, only 12 days (and seven business days) after service.  *Id.* at 2.

TMP now moves to quash the Subpoena because it seeks to compel the production of materials protected by the journalist's privilege that is well-established in this Circuit.  TMP files

4

its motion in this Court because it is "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A); *see also Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*, 2021 WL 411379, at *2 (S.D.N.Y. Feb. 5, 2021) ("[A] motion to quash a subpoena must be timely filed with 'the court for the district where compliance is required,' *not* with the issuing court." (quoting Fed. R. Civ. P. 45(d)(3)(A), (B))). As explained above, TMP, Mr. Cooper's employer, has its headquarters and primary newsroom in Manhattan, which is within this Court's jurisdiction. The Subpoena seeks the production of records Mr. Cooper gathered for TMP during the course of his employment. Thus, compliance with the Subpoena would require TMP and/or Mr. Cooper to produce records from TMP's files in Manhattan or stored on TMP servers with a nexus to TMP's headquarters and primary newsroom in Manhattan. Therefore, Second Circuit privilege law governs the Subpoena and this motion. *See, e.g.*, *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *3–5 (S.D.N.Y. Apr. 7, 2021) (applying Second Circuit privilege law in adjudicating motion to quash subpoena issued in connection with underlying case in the Western District of Texas); *Pugh v. Avis Rent a Car Sys., Inc.*, 1997 WL 669876, at *3–6 (S.D.N.Y. Oct. 28, 1997) (same, for motion to quash subpoena issued in connection with underlying case in the Eastern District of North Carolina).

## II.   ARGUMENT

This Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The Second Circuit recognizes a broad journalist's privilege that protects reporters and press organizations from being forced to disclose even nonconfidential materials collected during the newsgathering process. Unpublished portions of interviews fall within the core of such protected materials. The journalist's privilege bars the compelled disclosure of unpublished portions of Mr. Montague's interviews unless Cleveland can meet the demanding test to overcome the privilege.

5

Cleveland cannot do so. The requested materials are neither likely relevant to a significant issue in the Wrongful Discharge Suit, nor unobtainable through other means. Accordingly, the Court should quash the Subpoena.

    A.    **THE JOURNALIST'S PRIVILEGE PROTECTS TMP'S RESEARCH AND REPORTING**

By issuing the Subpoena to TMP, Cleveland seeks to do exactly what federal law prohibits. Cleveland is attempting to leverage TMP's reporting about an individual for its own strategic gain in litigation adverse to that individual. But the qualified journalist's privilege, as recognized by the Second Circuit, protects journalists from the compelled disclosure of materials obtained during the newsgathering process. *See Gonzales*, 194 F.3d at 35. "It is settled law in this Circuit, at least in the civil context, that a journalist possesses a qualified privilege protecting him or her from the compelled disclosure of even nonconfidential materials." *United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011).

The journalist's privilege serves two interests safeguarded by the First Amendment. *See, e.g.*, *Pugh*, 1997 WL 669876, at *3. First, the privilege "reflect[s] a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) (quoting *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972)). Journalists cannot foster and maintain trust with sources if the public perceives them to be the unwitting accomplices of civil litigants. Second, the privilege protects the press's independence in its "selection and choice of material" for publication. *Columbia Broad. Sys., Inc. v. Dem. Nat'l Comm.*, 412 U.S. 94, 124 (1973). Any discovery seeking "to examine the reportorial and editorial processes … would represent a substantial intrusion on fact gathering and editorial privacy which are significant aspects of a free press." *In re Appl. of Consumers Union of U.S., Inc.*, 495 F. Supp. 582, 586

6

(S.D.N.Y. 1980). The privilege serves this interest by ensuring that journalists remain uninhibited in reporting on the subjects of the day, however controversial or unpopular they may be, without fear of future directives to divulge their sources and materials not selected for publication or broadcast.

Here, the materials Cleveland requests in the Subpoena are protected by the journalist's privilege. TMP is an established, award-winning news organization. Any materials responsive to the Subpoena were generated or gathered in the course of Mr. Cooper's reporting for the Feature. These newsgathering materials, which belong to a press outlet and/or its reporter, are protected by the privilege—although "to establish entitlement to the privilege," "[a] person need not be a credentialed reporter" and the associated media outlet need not be "an established press entity" such as TMP. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011). And Cooper's "intention at the time the information in question [was] gathered was for the purpose of disseminating the information to the public." *In re McCray, Richardson, Santana, Wise, and Salaam Litig.*, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013) (emphasis omitted), *adopted in part and modified in part by* 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013).

**B. CLEVELAND CANNOT MAKE THE SHOWING REQUIRED TO OVERCOME THE JOURNALIST'S PRIVILEGE**

A subpoena seeking non-confidential news materials must be quashed unless the party seeking disclosure makes two distinct showings. The party seeking to overcome the privilege must demonstrate that the "materials at issue" are both: (1) "of likely relevance to a significant issue in the case"; and (2) "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36. Cleveland cannot satisfy either element of this test.

7

### 1. THE REQUESTED MATERIALS ARE NOT LIKELY RELEVANT TO A SIGNIFICANT ISSUE IN THE WRONGFUL DISGHARGE SUIT

Cleveland cannot clear the high bar to show that the requested materials are likely relevant to a significant issue in the Wrongful Discharge Suit.  The relevance element requires the party seeking disclosure to "show a particularized need" for the requested materials in the underlying litigation.  *Sikelianos v. City of New York*, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008).  To do so, the party must assert more than "general claims that [the requested materials] are likely to contain relevant material" and must instead point to "particular interview[s] or outtake[s] that would provide the evidence [it] seek[s]."  *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013).  Additionally, "[t]he relevancy requirement is not met if the information sought in the subpoena is merely duplicative or serving a 'solely cumulative purpose.'"  *New Eng. Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*, 2014 WL 1567297, at * (S.D.N.Y. Apr. 17, 2014) (quoting *Burke*, 700 F.2d at 78); *see also, e.g.*, *Pugh*, 1997 WL 669876, at *4 (requested information may not be "duplicative and cumulative").

Here, Cleveland cannot show that the requested materials are likely relevant to a significant issue in the Wrongful Discharge Suit for two reasons.  First, to the extent that Cleveland seeks the requested materials for purposes of impeaching Mr. Montague, future impeachment is not relevant to a significant issue in the case.  Courts have repeatedly refused to pierce the journalist's privilege where the requested materials would be used to impeach a witness in the underlying litigation. *See, e.g.*, *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 2004 WL 3246719, at *2 (D. Conn. Mar. 22, 2004) (requested materials "would only be admissible to impeach [a party] at trial," which "is an insufficient reason to vitiate the privilege"); *United States v. Hendron*, 820 F. Supp. 715, 718 (E.D.N.Y 1993) (quashing subpoena where party seeking disclosure sought materials only for future trial impeachment); *see also In re Appl. to Quash Subpoena to Nat'l*

8

*Broadcasting Co.*, 79 F.3d 346, 352 (2d Cir. 1996) (recognizing that "[o]rdinarily, impeachment material is not critical or necessary to the maintenance or defense of a claim").

Second, the requested materials duplicate materials that Cleveland already possesses. Cleveland seeks statements made by Mr. Montague related to his current employment and his "interactions with Andrew [Long]," former Cleveland Public Safety "Director Karrie Howard," and the Cleveland Division of Police and any of its employees. *See* Criss Decl., Ex. 3, at 4. Yet Cleveland already possesses the entire set of files related to Mr. Montague's employment with and termination from the Cleveland Division of Police—the event giving rise to the Wrongful Termination Suit. Any non-impeachment information about these subjects that Cleveland could obtain from unpublished portions of Mr. Montague's interviews would be merely cumulative to information contained in Cleveland's own files. *See Burke*, 700 F.2d at 78 (materials from which "any information to be gleaned . . . would be merely cumulative" do not defeat the journalist's privilege).

### 2. THE REQUESTED MATERIALS ARE REASONABLY ATTAINABLE FROM OTHER AVAILABLE SOURCES

Cleveland also cannot show, as it must, that the requested materials are not reasonably attainable from other available sources. In attempting to show unavailability, "the issuers of subpoenas" must in fact "make reasonable efforts through discovery to obtain the information from alternative sources to defeat the privilege." *New Eng. Teamsters*, 2014 WL 1567297, at *4; *see also Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 122 (D.D.C. 2002) (failure to exhaust alternative sources weighed "so heavily in favor of quashing the subpoena" that court quashed subpoena without undertaking additional analysis). "Materials are reasonably unobtainable, for instance, when the only other party who knows the information *cannot be deposed*." *In re McCray*, 991 F. Supp. 2d at 471 (emphasis added). Or "where a significant hardship prevents the party

9

from gathering the information." *Id.*; *see Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y. 2007) (significant hardship where "equivalent information could be obtained only by subpoenaing and deposing hundreds of nonparty witnesses who filled out the questionnaires."). Beyond seeking to obtain the requested information through discovery, the party seeking disclosure must also detail its efforts "to obtain [the requested] information from alternate sources." *Breaking Media*, 2021 WL 1299108, at *5.

Here, however, Cleveland has not even suggested that it has tried to obtain the requested information from any sources other than TMP and/or Mr. Cooper. *See* Criss Decl., Ex. 2. In the Wrongful Discharge Suit, non-expert discovery for one of Mr. Montague's claims against Cleveland does not close until September 23, 2024. *See* Minute Entry, *Montague v. City of Cleveland*, No. 1:22-cv-01878 (N.D. Ohio May 24, 2024) ("Case Management Conference held on 5/24/2024. Case is assigned to the standard track. Non-expert discovery on Plaintiff's USERRA claim shall be completed by 09/23/2024. Court stays discovery on Plaintiff's Monell claim per parties [*sic*] agreement."). Cleveland has not indicated, for example, that it sought the requested information—much less that it was rebuffed in doing so—through interrogatories, requests for production of documents, requests for admission, or depositions of individuals such as Mr. Howard and Mr. Long. Cleveland's failure to detail its efforts to obtain requested information from other sources necessitates quashing the Subpoena. *See, e.g.*, *New Eng. Teamsters*, 2014 WL 1567297, at *5 (refusing to overcome qualified journalist's privilege where party seeking disclosure failed to provide "any deposition testimony from [opposing party's] records custodians or Rule 30(b)(6) witness or interrogatory responses from any [of opposing party's] witnesses" to establish that subpoenaed information was not reasonably available from opposing party before subpoenaing journalist).

And Cleveland *can* obtain the requested information from Mr. Montague himself—chiefly during his upcoming deposition in the Wrongful Discharge Suit. Mr. Montague's availability to be deposed, by itself, means that the requested information is reasonably attainable from another available source. *See, e.g.*, *Breaking Media*, 2021 WL 1299108, at *5 (party seeking disclosure failed to demonstrate that the requested information was not available from other sources because he "could have obtained this information during the deposition of [the opposing party's] principal" and "fail[ed] to state whether he asked about this information or otherwise addressed [it]"); *In re Parker*, 2019 WL 4233148, at *5 (N.D.N.Y. Sept. 6, 2019) (party seeking disclosure failed to demonstrate that the requested information was not available from other sources because it had yet to complete the deposition of the relevant parties); *see also In re Petrol. Prods. Antitrust Litig.*, 680 F.2d 5, 8–9 (2d Cir. 1982) (per curiam) (requiring additional depositions before compelling disclosure of confidential sources).

Cleveland's ability to take discovery from Mr. Montague obviates any potential reason to pierce the journalist's privilege and compel discovery from TMP. To show otherwise, Cleveland would need to prove that Mr. Montague has somehow spoliated the requested information—related to his own communications with Mr. Long, Ms. Howard, and the Cleveland Division of Police and any of its employees—about which he has personal knowledge. *See, e.g.*, *Aberdeen City Council v. Bloomberg L.P.*, 688 F. Supp. 3d 169, 182 (S.D.N.Y. 2023) (party seeking disclosure failed to demonstrate that the requested information could not be obtained from other available sources because the party had the opportunity to take discovery but "provide[d] no evidence that [any of the] defendants have spoliated evidence, let alone spoliated [the requested communications]"). Cleveland cannot make such a showing here.

11

At bottom, the journalist's privilege bars Cleveland from compelling TMP and Mr. Cooper "to do its own investigative work for it." *In re Search Warrant Executed on Nov. 5, 2021*, 2023 WL 3005726, at *5 (S.D.N.Y. Mar. 21, 2023). Instead, the Subpoena should be quashed and Cleveland should pursue the information it seeks through discovery from Mr. Montague and other non-privileged sources in the Wrongful Discharge Suit.

### C. THE SUBPOENA FAILED TO ALLOW A REASONABLE TIME TO COMPLY

The Subpoena is also defective because it does not accord TMP a reasonable time to comply. Under Federal Rule of Civil Procedure 45(d)(3)(A)(i), a subpoena's failure "to allow a reasonable time to comply" is "a mandatory ground to quash." *Bouchard Transp. Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 2015 WL 6741852, at *2 (S.D.N.Y. Nov. 4, 2015). Cleveland served TMP with the Subpoena through TMP's registered agent on June 26, 2024, but did not inform TMP's counsel that it had effected service until July 9, 2024—the day *after* the Subpoena commanded compliance.

In any event, the Subpoena failed to allow a reasonable time to comply. Even using the June 26 date on which the subpoena was served without courtesy notice, the Subpoena gave TMP only twelve days before the July 8 date of compliance. Courts in the Second Circuit have identified "14 days from the date of service" as the time to comply that is considered "presumptively reasonable." *Wisc. Province of Soc'y of Jesus v. Cassem*, 2019 WL 4928866, at *3 (D. Conn. Aug, 22, 2019) (collecting cases); *see also, e.g.*, *In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.3*, 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010) ("Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable in light of the language of Rule 45(c)(2)(B)."). Here, the Subpoena failed to provide even that minimum required to enjoy any presumption that

the time to comply was reasonable. For that deficiency alone, the Subpoena should also be quashed.

\* \* \*

The journalist's privilege exists to prevent litigants like Cleveland from trying to wield a news organization's journalistic work for their own interests. "If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against a[] [party] that had been the subject of press attention to sift through press files in search of information supporting their claims." *Gonzales*, 194 F.3d at 35.

Furthermore, compelled production from TMP would "impair [its] ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation." *Id.*

Courts in this Circuit frequently prevent such impositions on the free press and quash subpoenas seeking to compel the disclosure of unpublished, non-confidential materials protected by the journalist's privilege. *See, e.g.*, *Gonzales*, 194 F.3d at 36; *Aberdeen City Council*, 688 F. Supp. 3d. at 183; *Sikelianos*, 2008 WL 2465120, at \*1; *Blum v. Schlegal*, 150 F.R.D. 42, 45–46 (W.D.N.Y. 1993); *United States v. Karen Bags, Inc.*, 600 F. Supp. 667, 669–71 (S.D.N.Y. 1985). Just as those courts have blocked "fishing expeditions," *Pugh*, 1997 WL 669876, at \*5, in those cases, this Court should quash Cleveland's Subpoena.

## CONCLUSION

For the foregoing reasons, the Court should grant TMP's motion and quash Cleveland's subpoena.

Dated: New York, New York
       July 9, 2024

COVINGTON & BURLING LLP

By:    *S/ Jason P. Criss*
        Jason P. Criss

Harrison A. Newman
Giovanni J. Scarcella
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
jcriss@cov.com
hnewman@cov.com
gscarcella@cov.com

*Counsel for Non-Party*
*The Marshall Project, Inc.*