USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/28/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
THE MARSHALL PROJECT, INC.                          :
                                                    :
                                     Petitioner,    :           24-MC-309 (VEC)
                                                    :
             -against-                              :           OPINION & ORDER
                                                    :
CITY OF CLEVELAND,                                  :
                                                    :
                                     Respondent.    :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On July 9, 2024, The Marshall Project, Inc. ("TMP") moved to quash a subpoena *duces tecum* served by the city of Cleveland ("Cleveland") that demanded production of unpublished materials gathered during the reporting process; Cleveland seeks the documents for use in *Montague v. City of Cleveland*, No. 22-CV-1878 (N.D. Ohio), a lawsuit pending in the District Court for the Northern District of Ohio ("Motion"). *See* Mot., Dkt. 1. Cleveland opposed the Motion, arguing that this Court lacks jurisdiction, that the Motion is untimely, and that the "journalist's privilege" does not apply. *See* Cleveland's Opposition to TMP's Motion to Quash ("City Opp."), Dkt. 19. For the following reasons, TMP's Motion to Quash is GRANTED.

## BACKGROUND[1]

TMP is a non-profit news organization that publishes articles about the American criminal justice system. Sealey Decl. ¶ 4, Dkt. 5. TMP's headquarters and primary newsroom is in Manhattan. Stern Decl. ¶ 3, Dkt. 24. On May 23, 2024, TMP published an article written by

---

[1]   Citations to "Criss Decl." refer to the Declaration of Jason Criss at Dkt. 4 and the attached exhibits; citations to "Sealey Decl." refer to the Declaration of Geraldine Sealey at Dkt. 5 and the attached exhibits; citations to "Cooper Decl." refer to the to the Declaration of Wilbert Cooper at Dkt. 6 and the attached exhibits; and citations to "Stern Decl." refer to the Declaration of Eli Stern at Dkt. 24 and the attached exhibits.

1

TMP staff writer Wilbert Cooper titled *Out of the Blue: The Rise and Fall of a Black Cop*. Sealey Decl. ¶ 6; Ex. 1, Dkt. 5–1. The article focuses on Vincent Montague, a Black former police sergeant in Cleveland, Ohio. Sealey Decl., Ex. 1. Montague had previously served as the head of the Black Shield Police Association, a non-profit organization that provides support to Black police officers in Cleveland. *Id*. The article also discussed the history of Black police officers in Cleveland, the culture of the Cleveland Police, and disparities in discipline between Black and white officers. *Id*. Cooper conducted both in-person and telephone interviews with Montague during the reporting process. Cooper Decl. ¶¶ 6–7, Dkt. 6. He researched and wrote most of the article while residing in Brooklyn and in New Orleans, although he conducted additional news gathering during a trip to Cleveland. *Id*. ¶ 5.

The Cleveland Police Department had fired Montague on December 4, 2021, approximately two and a half years prior to publication of the article. Sealey Decl., Ex. 1. Also well before the article was published, Montague had sued Cleveland and three individuals alleging wrongful termination. *See* Compl., Dkt. 1, *Montague v. City of Cleveland*, No. 22-cv-1878 (N.D. Ohio). Currently outstanding in that litigation are Montague's Uniformed Services Employment and Reemployment Rights Act of 1994 and *Monell* claims. *See Montague,* No. 22-CV-1878, 2023 WL 8593408, at *9 (N.D. Ohio Dec. 11, 2023).

Matthew Aumann, an attorney for Cleveland, contacted Cooper on May 30, 2024, requesting copies of any audio recordings or written notes from Cooper's interviews of Montague. Cooper Decl. ¶ 10. Cooper did not respond. *Id.* ¶ 11. On June 10, 2024, TMP notified Aumann that it would not provide the requested audio files or written notes. Criss Decl., Ex. 1, Dkt. 4–1. On June 13, 2024, Aumann sent TMP's attorney a proposed subpoena demanding the requested materials. Criss Decl., Ex. 2, Dkt. 4–2. On June 13, 2024, and June

18, 2024, TMP's attorney notified Aumann that he was not authorized to accept service of a subpoena on behalf of TMP and directed Aumann to Cogency Global, TMP's agent for service. Criss Decl. ¶¶ 8–9.

On June 26, 2024, Cleveland served a third-party subpoena *duces tecum* (the "Subpoena") on TMP through Cogency Global; Cogency Global notified Schulte Roth & Zabel LLP, a law firm that has not performed legal work for TMP in the past ten years, that it had been served with a subpoena.[2] *Id*. ¶ 10; Stern Decl. ¶¶ 7–8. Neither Cogency Global nor Schulte Roth & Zabel LLP informed TMP or its current attorney of the Subpoena. Stern Decl. ¶ 8. The Subpoena required compliance by 10:30 A.M. on July 8, 2024, and identified the place of compliance as Aumann's email address. Criss Decl., Ex. 3, Dkt. 4–3 . On July 9, 2024, one day after the return date on the Subpoena, Aumann informed TMP's attorney that Cleveland had effected service through Cogency Global. Criss Decl. ¶ 11.

## DISCUSSION

### I.       The Motion to Quash is GRANTED

#### A. Legal Standard

Federal Rule of Civil Procedure 45 permits a party to serve a subpoena for the production of documents and other information on a non-party. Fed. R. Civ. P. 45(a)(1). Under Rule 45(d), the subpoena recipient may move to quash or modify the subpoena if, *inter alia*, the subpoena

---

[2]   The Subpoena demanded "[a]ny and all statements made by Vincent Montague, regardless of medium (audio files, video files, emails, texts, correspondence, etc.) that relate to . . . interactions with Andrew Bird . . . interactions with Director Karrie Howard . . . interactions with the Division of Police . . . [and] Vincent Montague's current employment," along with "[a] declaration or sworn statement . . . that provides [that]  . . . [t]he produced records are true and accurate copies of records maintained in the ordinary course of scope of business of the Marshall Project and/or Wilbert Cooper [.]" Criss Decl., Ex. 3.

Despite the wording of the Subpoena, the parties agree that it is seeking interactions with Andrew Long, not Andrew Bird. City Opp. at 4 n.2; TMP Mem. at 4, Dkt. 3.

3

requires compliance outside the geographical limits specified in Rule 45(c) or requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3)(A)(ii)–(iii). "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citations omitted). The decision whether to grant or deny a motion to quash is left to the sound discretion of the district court. *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

### B. The Southern District of New York Has Jurisdiction Over TMP's Motion

Cleveland argues that this Court lacks jurisdiction because the Subpoena appropriately requires compliance in the Northern District of Ohio. In support, it argues that because the Subpoena identifies the Northern District of Ohio as the "place of compliance," and because Rule 45(c)(2), Fed. R. Civ. P., provides that a subpoena can require the production of documents "at a place," the Northern District of Ohio is the place of compliance, regardless of where TMP is located. City Opp. at 6–8. Second, Cleveland argues that Rule 45(c)(2)(A) provides that a subpoena "may command" production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." *Id.* at 8. Because TMP has a Cleveland-based staff of six reporters, Cleveland asserts that there is no question that TMP "regularly transacts business" in the Northern District of Ohio, making it the place of compliance and the appropriate jurisdiction in which to bring this Motion. *Id*. at 9.

Cleveland is correct that the district in which compliance is required has jurisdiction over a motion to quash; Cleveland is mistaken, however, that this Court lacks jurisdiction. Case law is not uniform on whether the location stated in the subpoena or the residence of the non-party is the location at which compliance occurs. *See Cleary v. Kaleida Health*, No. 22-CV-0026, 2024 WL 1297708, at *3 (W.D.N.Y. Mar. 27, 2024) (citation omitted). Courts in the Second Circuit tend to hold that compliance occurs at the residence of the non-party. *See Greater Chautauqua*

4

*Fed. Credit Union v. Quattrone*, No. 22-CV-2753, 2024 WL 497521, *1 (S.D.N.Y. Jan. 3, 2024) (finding that a court in the Southern District of New York "does not have the power to quash and/or modify the subpoena," because the non-party recipient is located within the Northern District of New York); *Burnett v. Wahlburgers Franchising LLC*, No. 16-CV-4602, 2018 WL 10466827, *2 (E.D.N.Y. Oct. 4, 2018) ("the proper forum for the motion to [quash] would be in the district in California where the nonparty's headquarters are located, not where the files are to be produced"); *Am. Plan Adm'rs v. South Broward Hosp. Dist.*, No. 21-MC-2663, 2021 WL 6064845, *2 (E.D.N.Y. Dec. 22, 2021) (holding that because petitioner's principal place of business is in Brooklyn, New York, the Eastern District of New York has jurisdiction over the motion to quash). To hold otherwise would vitiate the protections that Rule 45 affords subpoenaed non-parties, requiring them to litigate in distance locations. Because TMP maintains its headquarters and primary newsroom in Manhattan, the place of compliance is Manhattan.

Cleveland's second argument, that TMP "regularly transacts business" in the Northern District of Ohio and, therefore, it can require compliance in Cleveland, is similarly misplaced. Cleveland argues that TMP has a Cleveland office, which "easily meets the bill" for what it means to "regularly transact[] business in person" as that phrase is used in Rule 45. City Opp. at 9.

TMP has 76 full-time employees and three part-time contract workers: of those, five full-time employees and one contract worker comprise TMP's Cleveland news team. Stern Decl. ¶¶ 5–6. Contrary to Cleveland's assertion, City Opp. at 9, TMP does not have an office in Cleveland. Stern Decl. ¶ 6. Its six staff members work remotely from home. *Id.* TMP's only physical office is its Manhattan headquarters. *Id.* Aside from the presence of a small handful of staff in Ohio, there is no evidence that TMP "regularly transacts business in person" in the

Northern District of Ohio. *See M'Baye v. N.J. Sports Prod., Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007) (conducting "business transactions" in a city "via telephone, email and fax" is not regularly transacting business in person in that city).

Courts within this Circuit have fairly consistently held that, under Rule 45, the party issuing a subpoena to a non-party entity can require compliance only in the district in which the entity is headquartered or at a place within 100 miles of the entity's headquarters. *Tapjets Inc. v. United Payment Servs., Inc.*, No. 19-CV-3740, 2020 WL 13581674, at *9 (E.D.N.Y. Sept. 17, 2020) (quoting *Burnett*, 2018 WL 10466827, at *2). *See also In re Smerling Litig.*, No. 21-CV-2552, 2022 WL 684148, at *2 (S.D.N.Y. Mar. 8, 2022) (denying a non-party's motion to quash because the place of compliance was Boca Raton, Florida, where the non-party's "principal place of business" is located); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) ("[D]espite Google having an office in Venice, the proper district to hear a motion to compel is where Google is headquartered."); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015) (holding that there is "no question" that the proper district in which to hear a motion to compel compliance with a Rule 45 non-party subpoena is the district in which the non-party is headquartered).

Because TMP is headquartered in Manhattan, there is no evidence it regularly conducts business in person in Cleveland, and Cleveland is more than 100 miles from Manhattan, TMP cannot be required to comply with the Subpoena in Cleveland. Because Manhattan is an appropriate place for compliance, this Court has jurisdiction to decide TMP's Motion.

### C. Good Cause Exists to Excuse TMP's Untimely Motion

Cleveland argues that the Court must deny TMP's Motion as untimely because it was filed on July 9, 2024, one day after the return date of the Subpoena. City Opp. at 12. "It is well

settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 516 (S.D.N.Y. 2022) (citation omitted). That said, district courts have discretion to consider untimely motions to quash when "good cause" exists. *Id*. (citing *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018)). Cleveland insists that TMP had ample time to comply with the Subpoena, maintaining that TMP received the Subpoena via email on June 13, 2024, and that a "delayed receipt by the [TMP's] preferred subpoena counsel is insufficient to show good cause." City Opp. at 13.

It is true that Cleveland's attorney sent a copy of the Subpoena to TMP's counsel on June 13, 2024; TMP's counsel clearly stated, however, that he was not authorized to accept service for TMP and provided Cleveland's attorney with information about TMP's agent for service. Criss Decl. ¶¶ 8–9. Cleveland then served the Subpoena through Cogency Global on June 26, 2024. *Id*. ¶ 10. Cogency Global did not, however, inform TMP that the Subpoena had been served, instead informing a law firm that has not represented TMP in a decade.[3] *Id*. Furthermore, Cleveland's counsel, who had been in contact with TMP's attorney prior to serving the Subpoena, failed to inform TMP's counsel that service had been effected until July 9, 2024, the day after the return date.[4] *Id*. ¶ 11. Despite this tortured chronology, TMP managed to file its Motion to Quash on July 9, 2024, the day it became aware that the Subpoena had been served.

---

[3] This is not, as Cleveland asserts, a delay due to failure to serve "TMP's preferred subpoena counsel." City Opp. at 13. Being told of a threatened subpoena and actually being served with a subpoena are two different things. Moreover, there is no factual dispute that TMP's attorney did not learn that the Subpoena had actually been served until after the return date.

[4] The Court hopes that this case might serve as a "teachable moment" for the attorneys involved. The professional, courteous action that Cleveland's counsel should have taken after serving Cogency Global was to notify the attorney for TMP with whom he had been engaged that service had been effected. In the same vein, TMP's attorney, having directed Cleveland to serve Cogency Global and then hearing nothing, could and should have ensured that Cogency Global had current contact information for TMP. While none of that was legally

Accordingly, although TMP's Motion is indisputably untimely, there is good cause to overlook the one-day delay, particularly because the delay caused Cleveland no prejudice.

### D. The Journalist's Privilege Applies

The Second Circuit has long recognized the existence of a qualified privilege for information gathered by an independent journalist. *Baker v. F & F Inv.*, 470 F.2d 778, 783 (2d Cir. 1972). The privilege, rooted in the First Amendment and federal common law, arises from a "concern for the potential harm to the paramount public interest in the maintenance of a vigorous, aggressive[,] and independent press capable of participating in robust, unfettered debate over controversial matters." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 33 (2d Cir. 1999) (internal quotation marks and citations omitted). The journalist's privilege protects both confidential and non-confidential press materials from disclosure. *Id.* at 32. To invoke the privilege, the individual or entity must be acting in "the role of the *independent* press" when "collecting the information in question." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011).

To overcome the privilege, the party seeking the materials must meet a two-prong test. The first prong requires the party seeking disclosure to demonstrate that the information sought is of "likely relevance" to a "significant issue" in the case. *Gonzalez*, 194 F.3d at 36. The second prong requires the issuer of the subpoena to show that the information is "not reasonably obtainable from other available sources." *Id*. The standards for overcoming the privilege are more rigorous for confidential sources than for non-confidential ones, *United States v. Shah*, No.

---

required, the legal profession is just that: a profession. Practitioners should behave professionally and courteously towards one another. Had either of those steps been taken, the parties would have saved themselves (and the Court) the time and aggravation of arguing about process and could have focused their attention instead on the merits of the dispute.

19-CR-833, 2022 WL 1422252, at * 2 (S.D.N.Y. May 5, 2022), and this case involves non-confidential sources.

TMP asserts the journalist's privilege over the materials sought by the Subpoena, which were all generated or gathered by Cooper during the course of information gathering for the article about Montague.  TMP Mem. at 6–7, Dkt. 3.  TMP is an established news organization, and Cooper's intention at the time was to gather information "for the purpose of disseminating [it] to the public." *Id.* at 7 (quoting *In re McCray, Richardson, Santana, Wise, and Salaam Litig.*, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013), *adopted in part and modified in part by* 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013)).  There is no suggestion that TMP and Cooper were acting as anything other than members of the independent press.

Cleveland argues that the journalist's privilege[5] does not warrant granting the Motion because TMP waived the privilege by failing to provide a privilege log and because, even if TMP preserved the privilege, Cleveland has overcome it.  The Court will address each argument in turn.

### 1. TMP Did Not Waive The Journalist's Privilege

Cleveland asserts that TMP's failure to produce a privilege log waived the privilege. City Opp. at 15.  The Court disagrees.  Federal Rule of Civil Procedure 45(e)(2) requires that any party claiming privilege "describe the nature of the withheld documents, communications, or

---

[5] Cleveland acknowledges that the Second Circuit recognizes the journalist's privilege but argues, citing *Branzburg v. Hayes*, 408 U.S. 665, 702 (1972), that because the U.S. Supreme Court does not, this Court should decline to apply Second Circuit precedent that "will inevitably be overturned." City Opp. at 14 n.8. This Court is not persuaded that there is significant daylight (if any) between the Second Circuit and the Supreme Court on this issue. But even if there were, in order for this Court to ignore controlling circuit precedent, "[i]t must be all but certain that the Second Circuit precedent will be overruled." *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830, 2022 WL 950955, at *3 (S.D.N.Y. Mar. 30, 2022) (citations omitted). It is far from certain that controlling Second Circuit precedent will be overruled; accordingly, this Court is bound by that precedent. *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003).

tangible things in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). Local Rule 26.2(b) provides: "[w]here a claim of privilege is asserted in response to discovery or disclosure . . . , and information is not provided on the basis of the assertion, the information set forth [*e.g.,* type of document, general subject matter of the document, date of the document, and author of the document] must be furnished in writing at the time of the response to the discovery or disclosure, unless otherwise agreed to in writing by the parties or ordered by the court."  Loc. R. 26.2(b).

Before Cleveland even issued the Subpoena, TMP objected to the request for recordings of conversations with Montague, both audio files and written notes, on the ground that those materials are protected from disclosure under the First Amendment to the U.S. Constitution and the Ohio Constitution.  Criss Decl. Ex. 1.  Then, in its Motion, TMP asserted a categorical privilege over all of the requested materials.  Local Rule 26.2(c)(1) provides that "when a party is asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category."  Loc. R. 26.2(c)(1).

This case is not like *Las Vegas Sun, Inc. v. Adelson,* No. 21-MC-17, 2021 WL 6621290 (D. Conn. Sept. 2, 2021), on which Cleveland relies.  In *Las Vegas Sun*, the subpoena requested fourteen categories of documents and the subpoenaed third-party witness failed to provide a privilege log, even though not all of the requested materials would have been subject to a journalist's privilege.  *See id.*, at *1.  Here, Cleveland has effectively made a single request for the reporter's file, and TMP's single response is that the entire file is privileged.

Although Rule 45(e)(2)(A) requires non-parties to provide a privilege log, there is no relevant case law in this Circuit holding that the press waives its journalist's privilege by failing

10

to produce a privilege log when it has moved to quash the entire subpoena for a single reason: all the requested materials are subject to the journalist's privilege. In this case, because the purpose behind Rule 45(e)(2)(A) has been met, TMP's failure to provide a privilege log did not waive its privilege.

### 2. Cleveland Has Not Overcome the Journalist's Privilege

Turning to whether Cleveland has adequately overcome TMP's claim of privilege, the Court concludes that it has not. Cleveland argues that Montague's statements about his interactions with the bar owner, Andrew Long, are likely relevant to Cleveland's stated reason for terminating Montague and to whether that reason was pretextual, which it asserts is the crux of the underlying litigation. City Opp. at 16–17. During Montague's interview with internal affairs, he stated that he did not remember facts relating to events that transpired in 2018, Compl. ¶ 25, Ex. A, Dkt. 19–1; according to TMP's article, however, Montague told Cooper that "he knew staying in contact with Long wasn't wise, but he felt bad for him," Sealey Decl., Ex. 1 at 33. Although the "standard for relevance to overcome the journalist privilege for non-confidential materials is low," *Sokolow v. Palestine Liberation Org.,* No. 04-CV-397, 2012 WL 3871380, at *3 (S.D.N.Y. Sept. 6, 2012), a litigant will not be granted unfettered access to a reporter's files, *Sikelianos v. City of New York*, No. 05-CV-7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008).

Here, Montague's statements regarding his interactions with Andrew Long are of "likely relevance," as Montague's termination from the Cleveland Police Department was predicated on dishonest responses Montague gave during his internal affairs interview regarding his interactions with Long. *See* Ex. H, Dkt. 19–8. One of the central issues in the underlying litigation is whether Cleveland's stated reason for Montague's termination was pretextual.

Although it may be that not everything Montague said to Cooper regarding his relationship to Long and his conduct as a Cleveland police officer is relevant to the underlying litigation, the standard for relevance to overcome the journalist's privilege for non-confidential materials is low. The Court agrees with Cleveland that Montague's statements to Cooper are likely relevant to a significant issue in the underlying action.

As to the second prong, Cleveland maintains that Montague's statements are not obtainable from another source, because it has already undertaken extensive discovery in the underlying case. City Opp. at 17. Cleveland has a video-recorded interview of Long by police, a pre-disciplinary hearing for Montague, and discovery from third parties. *Id*. at 18. Notwithstanding the discovery it has taken, Cleveland argues that TMP has the only statement in which Montague admits that he intentionally spoke to Long after Long had been arrested. *Id.* Cleveland argues that it cannot obtain a similarly objective statement "in a neutral setting." *Id.* It argues that Cooper's interview allowed Montague to "tell his story without the stilted questions (or adversarial posture) of a deposition." *Id*. Further, Cleveland asserts that a future deposition of Montague is not sufficient, as it has already obtained statements from Montague but seeks something that has eluded it: "Montague's objective statements in a relaxed neutral setting about what he knew and when." *Id.* at 20.

Cleveland does not dispute that Montague is available to be deposed; rather, it doubts its own ability to elicit the exact quote that TMP obtained from Montague during a deposition. Cleveland fails to explain why it needs to do so. While the article itself is hearsay as to the contents of Montague's statement to Cooper, there is no indication that Cooper would not readily confirm, either during trial testimony, deposition, or affidavit, that he accurately quoted

Montague in the article. Testimony about what Montague said during his interview by Cooper would clearly be admissible as the statement of a party opponent.[6] Fed. R. Evid. 801(d)(2).

More fundamentally, there is no case law supporting Cleveland's assertion that information is not "reasonably obtainable" elsewhere when Montague is available for a deposition. Cleveland has not deposed Montague in the underlying action; it nevertheless claims that it has "engaged in sufficient discovery," pointing to the internal affairs interview of Montague, Ex. C, Dkt. 19–3, a police interview of Long, Ex. B, Dkt. 19–2, and other discovery requests, Ex. J, Dkt. 19–10. City Opp. at 18. Despite the discovery Cleveland has already undertaken, the information it seeks is readily obtainable, as Cleveland "ha[s] the opportunity to pose questions concerning contradictions in the [TMP article] and elsewhere" during a deposition of Montague. *See In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 928 F. Supp. 2d 748, 758 (S.D.N.Y. 2013). Cleveland does not and cannot point to any case law that "that supports [its] contention that, in the context of discovery proceedings, the existence of a video [or audio] interview in a 'relaxed' setting will overcome the . . . reporter's privilege when the same witness[] [is] available for a deposition in a less 'relaxed' setting." *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 471 (S.D.N.Y. 2013). If the Court were to accept Cleveland's argument, it would eviscerate the protection accorded by the journalist's privilege.

Because Cleveland failed to make a showing that the information it seeks is not reasonably obtainable from other sources, TMP's Motion to Quash the Subpoena is GRANTED.

---

[6] The parties did not discuss whether Cooper and TMP would assert the journalist privilege as to material that appeared in the article. While there are legitimate First Amendment reasons why a reporter's unpublished newsgathering is privileged, those concerns are substantially diminished when it comes to materials that have been published. For that reason, it is not uncommon for journalists to testify at trial to confirm statements reported in a published article. *See United States v. Treacy*, 603 F. Supp. 2d 670, 672 (S.D.N.Y. 2009) (collecting cases).

## CONCLUSION

For the foregoing reasons, the Motion to Quash is GRANTED. The Clerk of Court is respectfully directed to close the open motion at docket entry 1 and terminate the case.

**SO ORDERED.**

Date: **October 28, 2024**
      **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**